## JOE CLINE *et. al.* v. STATE.

### No. A-1231.   Opinion Filed March 15, 1913.

#### (130 Pac. 510.)

1. APPEAL—Briefs—Form. When typewritten briefs are filed in this court, they should be so prepared that they may be read and understood by the court.

2. CONSTITUTIONAL LAW—Disturbance of Public Assemblage—Statutes—Penal Statutes—Enactment—"Religious Meetings"—Disturbance—Religious Liberty—"Religious Service." (a) The common-law doctrine of a strict construction of penal statutes has no place in the criminal jurisprudence of Oklahoma; but, on the contrary, such statutes must be liberally construed, and the fair import of their provisions must be accorded them, with a view to effect the objects for which they were enacted and to promote justice.

(b) As to whether or not a congregation of persons constitutes a religious meeting assembled for religious worship is always a question of fact to be determined by the jury from the testimony in each case and the instructions of the court.

(c) A "religious meeting" is an assemblage of people met for the purpose of performing acts of adoration to the Supreme Being, or to perform religious services in recognition of God as an object of worship, love, and obedience, it matters not the faith with respect to the Diety entertained by the persons so assembled.

(d) The crowning glory of American freedom is absolute religious liberty and the unquestioned and untrammeled right of each person to worship God according to the dictates of his own conscience, without let or hindrance from any person or any source whatever.

(e) The law affords equal protection to the religious views, rights, and forms of worship of all denominations, all classes, and all sects, and does not undertake to state of what they shall consist, or how such services shall be conducted.

(f) The celebration of the birth of Christ is a "religious service" in commemoration of an event upon which the hopes and destinies of all Christendom depend.

(Syllabus by the Court.)

*Appeal from Pottawatomie County Court;*
*Ross F. Lockridge, Judge.*

Joe Cline and Ellis Cline were convicted in the county court of Pottawatomie county, charged with the offense of dis-

turbing religious worship. The punishment of appellant Joe Cline was assessed at a fine of $50 and 10 days confinement in the county jail. The punishment of appellant Ellis Cline was assessed at a fine of $25 and 10 days confinement in the county jail. Appealed. Affirmed.

The evidence in this case may be stated in narrative form, as follows: On the evening of the 24th day of December, 1910, there was a Christmas tree celebration in a public school building in Pottawatomie county, which building was used both as a schoolhouse and also as a churchhouse. The meeting in question was held under the auspices of the Methodist denomination. The exercises were to consist of distributing presents from a Christmas tree, recitations by Sunday school scholars, and an address or sermon upon the life of Christ by Rev. Mr. Cross, the Methodist preacher in charge of that station. The meeting was opened by singing. The schoolroom was about 30x50 feet, and was full of men, women, and children. While Mr. Cross was speaking with reference to the birth of Christ and asking the Sunday school children some questions, some one in the rear of the room threw a pecan at the preacher, and great confusion was created by a number of young men in the rear of the building. Mr. Cross asked the question as to where Jesus was born. Some one among the young men in the rear of the building answered, "at Waco." It appears that Waco was the name of a store in this neighborhood. So much noise was made by the young men in the rear of the building, and the meeting was so much disturbed thereat, that Mr. Cross was not able to conclude his remarks, and was compelled to take his seat. Several persons were requested to go back in the rear of the building and get the names of those who were creating the disturbance. As a result of this a fight ensued, in which the appellant Joe Cline participated, and the appellant Ellis Cline used the most shocking profanity. The testimony shows that great confusion resulted from this disturbance, in which both of the appellants participated.

*A. J. Carlton* and *Baldwin & Pitman,* for appellants.
*Chas. West,* Atty. Gen., for the State.

FURMAN, J. (after stating the facts as above.)   First.
The briefs filed in behalf of appellants in this cause are so
badly typewritten, indistinct, blotted, and blurred as to be al-
most unintelligible.   For the purpose of saving expense to their
clients, we are perfectly willing to permit lawyers to file type-
written briefs; but these briefs should be so prepared that they
may be readily read and understood by the court.   It is an
abuse of the privilege to file typewritten briefs to prepare them
in such manner that they cannot be easily read.   We have had
so much trouble with indistinct typewritten briefs that we are
seriously considering the proposition of requiring all briefs to
be printed, and will be forced to do so if counsel do not exer-
cise more care in the future in this matter.   We will either
have to adopt this rule, or we will be forced to strike from the
records all briefs which are not clearly typewritten and treat
the cases in which they are filed as having been submitted with-
out briefs.

Second.   After spending nearly two days in trying to find
out from the indistinct briefs filed just what the contentions
of counsel for appellants are, we think that their position may
be summed up in the proposition that the meeting at which the
disturbance complained of occurred was simply a Christmas
festival; and that, as such, it did not constitute a religious meet-
ing, within the meaning of our statute.   Counsel for appellants
have cited authorities from a number of states supporting this
view; but they have overlooked the fact that in each of the
states from whose opinions they quote, the common-law doctrine
of a strict construction of penal statutes prevails, and that the
opinions upon which they rely are based upon this doctrine.   An
entirely different rule in the construction of penal statutes exists
in Oklahoma.   Section 2027, Comp. Laws 1909, is as follows:

"The rule of common law that penal statutes are to be
strictly construed has no application to this Code.   All its pro-
visions are to be construed according to the fair import of

their terms, with a view to effect its objects and to promote justice."

Let us now apply the doctrine of a liberal construction to the statutes upon which this prosecution is based and accord to all of their provisions the fair import of their terms, with a view to effect the objects for which they were enacted and to promote justice. This is just what we are required to do by section 2027, *supra*.

The offense of disturbing religious meetings is created and defined by sections 2072 and 2073, Comp. Laws 1909, (Rev. Laws, secs. 2412, 2413), as follows:

"Sec. 2072. Disturbing religious meetings.—Every person who willfully disturbs, interrupts or disquiets any assemblage of people met for religious worship, by any of the acts or things hereinafter enumerated, is guilty of a misdemeanor.

"Sec. 2073. Definition of disturbance.—The following are the acts deemed to constitute disturbance of a religious meeting: 1. Uttering any profane discourse, committing any rude or indecent act, or making any unnecessary noise, either within the place where such meeting is held, or so near it as to disturb the order and solemnity of the meeting. 2. Exposing to sale or gift any ardent or distilled liquors, or keeping open any huckster shop within one mile of the place where any religious society or assembly shall be actually convened for religious worship, and in any other place than such as shall have been duly licensed and in which the person accused shall have actually resided or carried on business. 3. Exhibiting, within a like distance, any shows or plays without a license by the proper authority. 4. Engaging in, or aiding or promoting, within the like distance, any racing of animals or gaming of any description. 5. Obstructing in any manner, without authority of law, within the like distance, the free passage along any highway to the place of such meeting."

It is seen by these statutes that the terms "religious meetings" and "religious worship" are used interchangeably with each other; and that the same meaning is attached to each. The law guards such meetings so carefully that it makes it an offense to do certain things within one mile of the place at which they are held, although no actual disturbance be proven

to have been occasioned thereby. The theory of the law is that the doing of these prohibited things within such close proximity to the place of such meetings is inconsistent with and violative of the spirit and harmony of such meetings, and the law therefore necessarily implies a disturbance therefrom.

What is the fair import of the terms "religious meetings" and "religious worship"? The word "religion" is defined in Webster's New International Dictionary as follows:

"The outward act or form by which men indicate their recognition of the existence of a .god or of gods having power over their destiny, to whom obedience, service, and honor are due; the feeling .or expression of human love, fear, or awe of some superhuman and overruling power, whether by profession of belief, by observance of rites and ceremonies; or by the conduct of life; a system of faith and worship; a manifestation of piety; as, ethical *religions;* monotheistic *religions;* natural *religion;* revealed *religion;* the *religion* of idol worshipers. *Religion* (as distinguished from *theology*) is subjective, designating the feelings and acts of men which relate to God. As distinguished from *morality, religion* denotes the influences and motives to human duty which are found in the character and will of God, while morality describes the duties to man, which true *religion* always influences."

In attempting to construe our statutes with reference to disturbing religious meetings and religious worship, we must remember that the crowning glory of American freedom is absolute religious liberty; and that every American has the unquestioned and untrammeled right to worship God according to the dictates of his own conscience, without let or hindrance from any person or from any source. The term "religious worship," therefore, can have no technical meaning in a legal sense, and is not restricted to any denomination, sect, or mode of religious worship. In its true sense a religious meeting is an assemblage of people met for the purpose of performing acts of adoration to the Supreme Being, or to perform religious services in recognition of God as an object of worship, love, and obedience, it matters not the faith with respect to the Deity entertained by the persons so assembled.

The law affords equal protection to the religious views, rites, and forms of worship of all denominations, all classes, and all sects, and does not undertake to state of what they shall consist, or how such services shall be conducted. Therefore, as to whether or not a congregation of persons constitutes a religious meeting assembled for religious worship is necessarily largely a question of fact to be determined by the jury from the evidence and under proper instructions from the court. A Christmas festival is not necessarily a religious meeting, and unfortunately it sometimes constitutes anything except a religious service; and as to whether or not this is true is always a question for the jury, under the testimony of each case and proper instructions from the court. This court takes judicial notice of the fact that religious services in this country generally consist of songs, sermons, and prayers. Counsel for appellants lay great stress upon the fact that there is no direct proof in the record that any formal prayer had been offered on this occasion prior to the disturbance; but this court also takes judicial notice of the fact that some religious meetings are held without formal prayer. But even if formal prayer was necessary and had not been offered, there is every reason to believe from the evidence in the record that it would have been offered, had it not been for the conduct of appellants and those acting with them. The proof is certain that the Methodist denomination had charge of the meeting, and a song had been sung, and that Rev. Mr. Cross, the Methodist preacher in charge of that station, was delivering an address or sermon upon the birth of Christ, a theme upon which the hopes and destinies of all Christendom depend. It was at this point that the meeting was disturbed by the brutal, cowardly, ruffianly, and sacrilegous conduct of appellants and those acting with them, as charged in the information and proven by the testimony. It would be difficult to imagine anything more highly calculated to wound the religious sentiments of the persons there assembled and to create a disturbance than the conduct of which the testimony shows appellants and those acting with them were guilty. To sustain the

contention of counsel for appellants would be to make a burlesque of both religion and the law, and to place the most sacred emotions of the human heart at the mercy of brutality, ruffianism, and rowdyism. We are only surprised that appellants and all persons acting with them were not each sent to jail for six months and fined the sum of $500. The conduct of which appellants were clearly proven to be guilty cannot be too severely condemned and all such characters should be made to know that if they do not respect the law, which protects the rights and feelings of others, they will be treated and punished as common criminals.

This is the first time that the question as to what constitutes a disturbance of religious worship has ever been presented to this court for determination. This character of offense is so wanton and inexcusable, and is so destructive of peace, morals, and good order, that we feel that the law should be liberally construed in favor of the state and strictly construed against appellants. Such characters are notified that they will look in vain to this court for protection when they violate either the letter or spirit of these statutes.

We find no prejudicial error in the record. The judgment of the lower court is therefore affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.