HUGHES et al. v. UNITED STATES.*

(Circuit Court of Appeals, Fifth Circuit. March 3, 1916.)

No. 2763.

1. POST OFFICE ⊕=35—FRAUDULENT USE OF THE MAILS—SCHEMES TO DEFRAUD.
Though defendants were physicians, qualified to administer treatment, and though they did not promise to administer any treatment without intending to do so when paid therefor, a scheme to obtain money from patients, by furnishing medicine or treatment without regard to the needs of the patient for that or any other treatment, or without making such diagnosis as would inform them of the patients' needs, was a scheme to defraud, within Criminal Code (Act Cong. March 4, 1909, c. 321) § 215, 35 Stat. 1130 (Comp. St. 1913, § 10385), prohibiting the use of the mails in the execution or attempted execution of such a scheme.
[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ⊕=35.]

2. CRIMINAL LAW ⊕=824(9), 1056(1)—INSTRUCTIONS—NECESSITY OF REQUESTS.
The failure of the court to charge a legal principle, such as the effect of circumstantial evidence, was not error, in the absence of a request for such instruction, or an exception based on its omission.
[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1999, 2668, 2670; Dec. Dig. ⊕=824(9), 1056(1).]

3. CRIMINAL LAW ⊕=776(2)—INSTRUCTIONS—GOOD CHARACTER OF DEFENDANTS.
An instruction that, if the jury believed evidence tending to show the good character of defendants, they should give it the same weight and consideration as any other fact proved, but that if, from the entire evidence, including that relating to good character, they believed defendants

guilty beyond a reasonable doubt, then the evidence of good character should not alter or influence the verdict, was a correct statement of the law, and covered everything to which defendants were entitled on that subject.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1844; Dec. Dig. ☞776(2).]

4. CRIMINAL LAW ☞649(1)—TRIAL—GIVING TIME TO EXAMINE CHARGE.

It was not an abuse of discretion to deny defendants' counsel 10 minutes in which to examine the court's written charge, for the purpose of framing exceptions or requesting additional instructions, where the charge was a written one, and not long, and there were no unusual conditions, other than the number of defendants on trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1512–1514; Dec. Dig. ☞649(1).]

5. CRIMINAL LAW ☞829(1)—INSTRUCTIONS COVERED BY THOSE GIVEN.

Requested instructions, which so far as proper were sufficiently covered by the general written charge given by the court, were properly refused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. ☞829(1).]

6. CRIMINAL LAW ☞1134(4)—MOTION FOR NEW TRIAL—DENIAL—REVIEW.

The denial of a new trial is not reviewable by the Circuit Court of Appeals.

[Ed. Note.—For other cases. see Criminal Law, Cent. Dig. §§ 2587, 2653, 3056, 3067–3071; Dec. Dig. ☞1134(4).]

7. POST OFFICE ☞49—FRAUDULENT USE OF MAILS—EVIDENCE.

Where, on a trial for using the mails in furtherance of a scheme to defraud, and for conspiring to commit such offense, the correspondence between defendant and post office inspectors introduced in evidence justified an inference of bad faith and fraud, the fact that only fictitious transactions based on decoy letters written by the inspectors were in evidence, and that no money was shown to have been received by the defendants, did not prevent the jury from inferring the existence of the conspiracy and the fraudulent scheme.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec. Dig. ☞49.]

8. POST OFFICE ☞35—FRAUDULENT USE OF MAILS—EVIDENCE.

Certain defendants, who were physicians, engaged in a scheme to defraud patients by obtaining money for medicine and treatment without regard to the needs of the patients. Defendant B. was an assistant of one of the principal defendants at his office, and consulting physician at another office maintained by such principal defendants. He was connected with the principal defendants in an intimate way, and assisted in the illegal business they were conducting. *Held* that, though he was not shown to have personally conducted any of the correspondence relied upon to establish the scheme and the use of the mails to accomplish it, there was sufficient evidence to support a verdict of guilty as against him, as the jury were justified in finding that he was connected with the principal defendants in the conduct of the enterprise, and that, being a physician, he was not ignorant of its guilty character.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ☞35.]

9. POST OFFICE ☞49—FRAUDULENT USE OF MAILS—EVIDENCE.

Certain physicians engaged in a scheme to defraud by furnishing medicine and treatment without regard to the needs of patients, and O. and C., who were not physicians, were employed in their office to dictate letters, send out form letters, pay employés, keep records, and work in

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the laboratory. Though they were connected by the evidence with the mailing of letters in furtherance of the fraudulent scheme, their connection with the scheme was apparently that of paid employés, rather than independent or equal participants in the scheme, and, so far as appeared, they performed their duties by virtue of their employment and because of the salary paid them, and not otherwise. *Held*, that the evidence was consistent with their innocence, and did not support a conviction.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec. Dig. ☞49.]

In Error to the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Nathan A. Hughes and others were convicted of offenses, and they bring error. Reversed and remanded as to two of the defendants, and affirmed as to the other defendants.

Nine defendants were convicted upon one trial of conspiring to violate section 215 of the Penal Code and of a violation of that section, and were sentenced to terms of varying length in the penitentiary. All nine defendants sued out writs of error to this court from the judgment of the court below. After the writs of error were sued out, one of the defendants, W. P. Pegram, died, and as to him the writ of error is abated. The remaining eight are prosecuting their writs of error, and assign error here upon the sufficiency of the indictment, upon certain rulings during the progress of the trial, and upon the sufficiency of the evidence to convict.

Guy Graham, H. H. Cooper, and Uvalde Burns, all of Houston, Tex., and Norman A. Dodge, of Ft. Worth, Tex., for plaintiffs in error.

John E. Green, Jr., U. S. Atty., and E. P. Phelps, Asst. U. S. Atty., both of Houston, Tex.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). [1] I. The sufficiency of the indictment was tested by a motion to quash and also by a demurrer. No ruling upon the motion to quash is shown in the record. The demurrer to the indictment was overruled, and this ruling of the court is assigned as error by the defendants Nathan A. Hughes, A. G. Olsen, T. W. Hughes, and O. F. Bourque.

The demurrer criticizes the indictment upon the general ground that it does not set out an offense against the laws of the United States. The indictment contains four counts. The first charges a conspiracy against all the defendants to violate section 215 of the Penal Code. The remaining three all charge the same defendants with the violation of that section. It is contended by the demurring defendants that the counts fail to show the devising of a scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent representations or promises, in that it is not charged that the defendants were not qualified to administer the treatment they promised to administer, nor that they did not, in fact, intend to administer such treatment, when paid therefor. It is true that

the indictment does not aver that defendants were not so qualified, nor that they promised with the then intention of not furnishing any treatment, though paid for so doing. The scheme relied upon by the government is a different one. The fraud is alleged to have consisted in soliciting and receiving money from patients, intending to furnish medicine or treatment therefor, without regard to the needs of the patient for that or any treatment, without making any diagnosis such as would inform them as to the need of the patient for any or for what treatment, and with the intent to receive the money, though they knew that the patient paying it had no need of any treatment, or of the treatment to be furnished in consideration of it, or had purposely refrained from informing themselves of his needs in those respects. In other words, the indictment charges the defendants with having devised a scheme to solicit money from patients for promised treatment, not intending to furnish treatment in good faith, but only as a pretext for securing the patient's money. Whether the treatment or medicine furnished was of little or much value intrinsically, in this view of the scheme, was of no consequence. We think the scheme alleged to have been devised by the defendants was one included within and prohibited by section 215 of the Code.

[2] II. The defendants Allen, Marable, Parlan, and Corl assign as error that the court failed to charge the jury upon the effect of circumstantial evidence and upon other questions of law pertinent to the issue. No exception was taken to the general charge on this or any ground, and no request was made by the defendants of the court to charge on any other questions than those covered by it. The court cannot be put in error for failing to charge a legal principle, in the absence of a request to do so, or exception based on the omission. This is the rule in the federal courts. Goldsby v. United States, 160 U. S. 70–77, 16 Sup. Ct. 216, 40 L. Ed. 343; Texas & Pacific Ry. Co. v. Volk, 151 U. S. 73–78, 14 Sup. Ct. 239, 38 L. Ed. 78; Encyc. Pleading & Practice, 266–268.

[3] III. The defendants Parlan, Marable, and Allen assign as error the refusal of the court to give a special instruction, requested by these defendants, upon the effect of evidence tending to show their previous good character. The court denied the charge in the language of the request, but charged the jury that, if they believed the evidence tending to show the good character of these defendants, they should give it the same weight and consideration as any other fact proven in the case, but that if, from the entire evidence (including that relating to good character), the jury should believe the defendants guilty beyond a reasonable doubt, then the evidence as to good character should not alter or influence the verdict. We think this substantially covered what the defendants were entitled to. The effect of the charge was not that evidence of good character was to be considered only in a doubtful case, as was held in the case of Edgington v. United States, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. Ed. 467, relied upon by defendants. Its direction was that the jury were to consider it, just as much as any other evidence submitted to them, in their inquiry as to whether the defendants were guilty beyond a reasonable doubt, but if, after

having so considered it, along with the other evidence, they reached the conclusion with that degree of certainty that defendants were guilty, then the fact of their previous good character, if proven, should not avail to change their verdict. This was a correct statement of the law.

[4] IV. Error is assigned upon the refusal of the court below to grant defendants' counsel 10 minutes in which to examine the written charge for the purpose of framing exceptions to it or making additional requests to charge. The charge was a written one, and was not long, and there were no unusual conditions attending the request, other than the number of defendants on trial, tending to show that its denial was an abuse of discretion on the part of the court below. Unless we are prepared to say that it is the duty of the judge to grant such a request whenever asked, and an abuse of discretion in every instance to deny it, we cannot hold in this case that its denial was an abuse of discretion.

V. Certain assignments are based on remarks made by the court below to counsel for some of the defendants during the progress of the trial. We have examined the assignments, and do not think prejudicial error is shown by the record to have been caused by the remarks excepted to.

[5] VI. The defendant Bourque, and the defendants T. W. Hughes, N. A. Hughes, and A. G. Olsen, requested specific instructions shown in the second bill of exceptions, which were not given by the court below. We think these instructions, so far as proper, were sufficiently covered by the general written charge given by the court.

[6] VII. Error is assigned upon the action of the court in denying defendants a new trial. This action of the trial court is not reviewable in this court.

[7] VIII. Each of the defendants requested the court to direct a verdict in his favor, which the court in each instance declined to do, and error is assigned upon its refusal. The contention of the defendants is that there was not sufficient evidence to connect the defendants with the conspiracy, or with the violations of section 215, charged in the indictment. The defendants N. A. Hughes, T. W. Hughes, August Marable, J. F. Allen, and Edward Parlan are shown by the government's evidence to have been physicians and principals in the business that was being conducted at the two locations mentioned as the seats of the conspiracy, and the jury were authorized to infer from the evidence that these defendants were responsible during the period covered by the years 1912 and 1913 for whatever was being done on the premises at each location, and that they shared or were to share in the profits of the transactions, knowing their actual character. It was also open to the jury to infer from the evidence that the purpose of the business that was being conducted during the period mentioned, at those places, was not the bona fide treatment of disease, but a scheme to secure money from patients, with no purpose to treat them in good faith as promised, but merely as a pretext for taking the money solicited. The correspondence between the inspectors and the defendants, introduced in evidence, was of a character, which justified the jury

in drawing the inference of bad faith and fraud, if they saw fit. The fact that only fictitious transactions, based on decoy letters written by inspectors, were in evidence, and that no money is shown to have been received by the defendants, did not prevent the jury from inferring the existence of the conspiracy charged in the first count or the fraudulent scheme charged in the remaining three. We think there was no error in submitting the cases of these defendants to the jury.

[8] The evidence as to the connection of the other living defendants, Bourque, Olsen, and Corl, who are prosecuting writs of error, is somewhat different. The defendant Bourque is shown to have been engaged as the assistant of the defendant Dr. J. F. Allen, at 602½ Main street, in the city of Houston, and as consulting physician at the other office of the defendants at 304½ Main street in the same city. He was at the latter address first, and it was at this address that the principal defendants, other than Allen, were in charge. The employés at the former address are shown to have been, sent by the defendant N. A. Hughes, who employed them, to the latter address, to work for the defendants there engaged, among whom was Bourque. It seems clear that Bourque had been connected with each location, and with all the principal defendants, in an intimate way, and had assisted in the illegal business the evidence tends to show they were conducting. Bourque being himself a physician, the jury were authorized to infer that he could not have been associated with the principal defendants in the conduct of the enterprise, as shown by the record, without having become acquainted with its illegitimate character. While the evidence tends to show that he was only an assistant of the defendant Allen at the office at 602½ Main street, it also tends to show that he was a consulting physician at the other location, and so acted in an equal rather than in a subordinate capacity. He is not shown to have personally conducted any of the correspondence, which the government relied upon to establish the alleged fraudulent scheme, and the use of the mails to accomplish it; but, if the jury were satisfied of the existence of a conspiracy between the principal defendants and himself to commit the fraud, it was not, necessary for the government to show his participation in the correspondence. We conclude that there was sufficient evidence to justify the jury in finding that he was connected with the principal defendants in the conduct of the enterprise, which was the basis of the prosecution, and that his being a physician precluded the inference that he was ignorant of its guilty character. If he participated in it in any way with knowledge of its character, he would be guilty of the offenses charged. We cannot say that the jury were not justified in reaching the conclusion of his guilt.

[9] The remaining defendants, Olsen and Corl, were not physicians. The record shows that they occupied the office of the principal defendants by virtue of an employment by them. The duties performed by Corl were to dictate letters, send out form letters, pay the employés off, keep the records, and work in the laboratory. Olsen performed similar duties; but the evidence as to his dictation of letters and send-

ing out form letters is less convincing as against him. The evidence tends to show that they were both employés of the principal defendants, and that they, in turn, exercised some control over the porters and stenographers, who were employed by the principal defendants. There is as much evidence in the record to connect Olsen and Corl with the business, so far as the mailing of letters is concerned, as there is against any of the defendants. The distinction which differentiates them is that what was done by Olsen and Corl seems to have been done in their capacity of paid employés, rather than as independent or equal participants in the scheme. Their connection with it, so far as appears from the record, only differs from that of the government's witnesses, who were stenographers and porters of the principal defendants, in degree, and not in kind. They were all paid employés of the principal defendants, vested with more or less authority, and charged with differing duties, but still, so far as the record shows, all performing their duties by virtue of their employment and because of the salary paid them, and not because of being principals and beneficiaries in the conspiracy. It cannot be contended that the evidence of the government witnesses is self-incriminating; and yet it serves to connect them with what the defendants did at the places and during the period of the conspiracy, to at least the same approximate degree, as does that relied upon by the government to convict the defendants Olsen and Corl. Like the government witnesses, Olsen and Corl were not physicians; their relation to the other defendants, so far as appears from the record, was nothing more than that of paid employés; their service in the laboratory is not shown to have materially differed from that of the government witnesses who were porters.

If the admitted connection of the government witnesses with the business is consistent with their innocence, as of course it is, then it would seem that the connection of the defendants Olsen and Corl with it should be held to be equally consistent with their innocence. The substance of the proof against them is their presence in the offices of the principal defendants, their employment by them, and the performance of the duties of their employment. This could only avail to connect them with the conspiracy, if it implies a guilty knowledge of the character of the business in which they had assisted. Such an implication would equally serve to convict the government witnesses, who were admittedly in the offices of the defendants and performing duties in the conduct of the business by virtue of a similar employment. In view of the facts that the record shows the defendants Olsen and Corl to have been laymen and employés, and not physicians or employers, we do not think their guilt is established, from the facts set out in the record, beyond a reasonable doubt. As employés merely, it is consistent that they did not share in spoils of the alleged conspiracy, except in the way of paid wages. As laymen it is consistent that they acquired no knowledge of the illegal character of the business, through their contact with it. The distinction between these two defendants and the remaining defendants lies in the fact that they are not shown to have acted in doing what they did in their own interest and for their own benefit, but as agents of the other defendants, and are not

shown to have had the medical knowledge that would have authorized the jury to infer that what they did as agents they did with that consciousness of wrongdoing which would be essential to make them co-conspirators with the other defendants.

As to the defendants N. A. Hughes, T. W. Hughes, August Marable, J. F. Allen, Edward Parlan, and O. F. Bourque, the judgment of the District Court is affirmed. As to the defendants A. G. Olsen and J. E. Corl, the judgment of the District Court is reversed and remanded.