HOLSMAN et al. v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. February 18, 1918.)

No. 3015.

1. INDICTMENT AND INFORMATION ⬤⟿91(1)—CONSPIRACY—WILLFUL.

An indictment charging a conspiracy to commit an offense against the United States by using the mails in connection with a scheme to defraud, whereby defendants advertised treatment for diseases of men, and intended to represent to any one inquiring that his symptoms showed that he was seriously afflicted, regardless of whether the treatment was needed, sufficiently disclosed defendants' fraudulent intent, though not specifically averring defendants acted willfully, for where the facts alleged necessarily import willfulness, failure to use the word "willful" itself is not fatal.

2. WITNESSES ⬤⟿268(1)—EXAMINATION—CROSS-EXAMINATION.

In a. prosecution for conspiracy to use the mails in connection with a scheme to defraud by advertising treatment for diseases and representing to persons inquiring that they were afflicted, regardless of the fact, where a medical witness testified that one of the defendants had charge of the office of the other, who was a physician, during his absence, the action of the court in refusing to permit cross-examination of such medical witness as to the office equipment was not, though the inquiry was somewhat germane to the direct examination, an abuse of the trial court's discretion, which as to cross-examination covers a wide range.

3. CRIMINAL LAW ⬤⟿423(6)—DECLARATIONS OF COCONSPIRATOR—ADMISSIBILITY.

An affidavit made by one of the defendants charged with conspiracy, but not in furtherance of the conspiracy, is not admissible against a coconspirator.

4. CRIMINAL LAW ⬤⟿1169(5)—INSTRUCTIONS—CURE OF ERRORS.

Where the court improperly admitted in evidence over the objection of one of the defendants an affidavit made by his alleged coconspirator, which did not relate to the conspiracy, the error was cured by an instruction that only those things said or done by one conspirator in furtherance of the objects of the conspiracy are chargeable against the other conspirators.

5. CRIMINAL LAW ⬤⟿1169(1)—APPEAL—HARMLESS ERROR.

Where. in a prosecution for conspiracy to use the mails in connection with a scheme to defraud, certain advertisements of one of the defendants were received under stipulation of counsel, the admission of other similar advertisements was not harmful.

6. CONSPIRACY ⬤⟿45—EVIDENCE—ADMISSIBILITY.

In a prosecution for conspiracy to use the mails in connection with a scheme to defraud, decoy letters sent by post office inspectors to ascertain whether the law was being violated, as well as answers thereto, are competent evidence, the inspectors in no way becoming parties to the conspiracy.

7. CONSPIRACY ⬤⟿45—EVIDENCE—ADMISSIBILITY.

Where post office inspectors, to ascertain whether the law was being violated. sent defendants decoy letters and received replies purporting to come from the office of one of the defendants, it is a legitimate inference that defendants authorized the replies to be sent, and they are admissible in a prosecution for conspiring to use the mails in connection with a scheme to defraud.

8. CRIMINAL LAW ⬤⟿413(1)—EVIDENCE—ADMISSIBILITY.

In a prosecution for conspiracy to use the mails in connection with a scheme to defraud, correspondence of defendants of a self-serving nature is not competent.

9. CRIMINAL LAW ⊚⇒1129(1)—ERROR—ASSIGNMENTS OF ERROR.

Alleged errors discussed in defendants' briefs, but not included in the assignments of error, need not be considered.

10. CRIMINAL LAW ⊚⇒829(1)—TRIAL—INSTRUCTIONS.

The refusal of requests covered by the instructions given is not error.

11. CONSPIRACY ⊚⇒45—OFFENSES.

In a prosecution for conspiracy to use the mails in connection with a scheme to defraud, replies to decoy letters sent by the post office inspectors are admissible to show that the conspiracy actually existed, but the conspiracy must have existed independently of the decoy letters, and a conviction cannot be had where it was induced as a result of such letters this not being a case where inspectors, suspecting one of using the mails to transmit nonmailable matter, send decoy letters, and the suspect in violation of law replies, using the mails to transmit nonmailable matter.

12. CRIMINAL LAW ⊚⇒829(3)—TRIAL—INSTRUCTIONS—REQUESTS.

In a prosecution for conspiracy to use the mails in connection with a scheme to defraud, the denial of defendants' requested instruction that evidence procured through decoy letters sent by post office inspectors could only be considered for the purpose of determining whether defendants had actually entered into the conspiracy, and such letters are not of themselves sufficient to sustain a conviction, was not error, where the court charged that a government official cannot conspire with another person to violate the laws of the United States for the purpose of getting such person convicted of a crime, and that the conspiracy with which defendants were charged must be proven to exist independently of any inducement to enter therein by any government official, but if the conspiracy does exist, it is immaterial what means government officers' adopted in order to procure evidence to establish it, for the instruction given covered the request.

13. CRIMINAL LAW ⊚⇒810—TRIAL—INCONSISTENT INSTRUCTIONS.

In such case, where the court further charged that a government officer, suspecting that a person or persons may be engaged in a business in violation of the laws of the United States, has the right to seek information under an assumed name, and that if such suspected person responds to such inquiry and by responding violates a law of the United States by using the mails to convey such information, it is no defense that the violation was in response to an inquiry of a government official, there was no contradiction or inconsistency between the several portions of the charge of which defendants could complain, the latter portion of the charge being proper for, as the decoy letters were not calculated to incite defendants to enter the conspiracy, the court might instruct that the fact that the letters were decoy letters is no defense.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Charles K. Holsman and Gideon M. Freeman were convicted of conspiracy to commit an offense against the United States, by devising and intending to devise a scheme and artifice to defraud to be accomplished by use of the mails, and they bring error. Affirmed.

The plaintiffs in error, with others, were indicted, charged with conspiracy to commit an offense against the United States, namely, the offense of devising and intending to devise a scheme and artifice to defraud, to be accomplished by placing and causing to be placed in the United States post office at Los Angeles, Cal., letters, packages, circulars, and advertisements, to be delivered through the post office establishment, whereby Freeman should be represented to be a practicing physician, especially and specifically qualified to treat certain diseases of men, who could and would cure persons so

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

afflicted, thus causing such persons to open correspondence with Freeman, giving the symptoms of their trouble, whereupon the said Freeman would represent to such persons that he could cure their afflictions and restore them to health, and thereby induce such persons to take treatment of him, for which he would require them to pay him such stipulated sums as he desired to fix; and it is further alleged that said statements, representations, and advice, so intended to be so made and given, were not intended by the defendants to be made in good faith, but were intended to be made and given for the purpose of inducing said persons to believe they were seriously afflicted with the said certain diseases, regardless of the fact as to whether they were so afflicted or not, and to induce such persons to send their money to defendants in cases where no treatment at all, physical or mental, was needed. For effecting the object of their alleged conspiracy, certain overt acts are set forth.

Holsman and Freeman were tried separately from the other defendants, and were convicted, and the cause is here on writ of error prosecuted by them.

Duke Stone, M. E. Meader, and Ralph Woods Pontius, all of Los Angeles, Cal., for plaintiffs in error.

Albert Schoonover, U. S. Atty., and Clyde R. Moody and Wm. Fleet Palmer, Asst. U. S. Attys., all of Los Angeles, Cal., for the United States.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] A demurrer to the indictment was overruled, and the action of the court in that respect is assigned as error. The specific reason advanced, challenging the sufficiency of the indictment, is that it in no way alleges fraudulent intent on the part of the defendants in doing what they are charged with doing.

The offense with which the defendants are charged is conspiracy to commit another offense denounced by Congress, namely, devising or intending to devise a scheme to defraud. The indictment does plainly charge that the defendants did knowingly and unlawfully conspire to commit the offense. This is formal, however, and it should further appear by reasonable intendment that what they are charged with conspiring to do was done with willful intent. While the word "willful," or its equivalent, is not in the indictment, other language is employed which is clearly indicative of an intent to defraud. The indictment shows that the acts alleged to have been done were done with the purpose of inducing persons to believe they were afflicted with a serious disease, when in fact they were not so afflicted, and this with the ultimate purpose of getting from such persons money to which the defendants were not entitled, by reason of not having rendered any service whatsoever. This shows very plainly the intent with which the acts were committed, and they were necessarily and essentially fraudulent.

Where the facts alleged necessarily import willfulness, the failure to use the word itself is not fatal. Van Gesner v. United States, 153 Fed. 46, 82 C. C. A. 180.

So, in the present case, fraudulent intent on the part of defendants, though not specifically averred, appears more than inferentially from

the indictment. The very scheme alleged to have been devised is impregnated with fraud, and an intent to defraud cannot be dissociated from the device. The demurrer was properly overruled.

[2] The next assignment of error relates to the cross-examination of Dr. Fuller. In his examination in chief he had related that, in the summer of 1912, he saw the defendant Holsman at the office of Dr. Freeman, and that Holsman had charge of the office during Freeman's absence; that when witness began working in May, 1912, the office was located at No. 305½ South Spring street, and was shortly afterwards removed to No. 327½, same street; that he saw Dr. Holsman at the latter place; that Holsman was around there about three weeks in the latter part of July, and had charge of the office during Dr. Freeman's absence. On cross-examination, the defendants attempted to show by the witness what the equipment of the office was, and the supply of drugs kept there, which, on objection, they were not allowed to prove. The matter was in a measure germane to the examination in chief. The court, however, has a wide range of discretion respecting cross-examination, and it is by no means apparent that the exercise of such discretion in thus curtailing the examination affected the defendants injuriously. The inquiry pertained to the association together of Holsman and Freeman, and the manner of equipment, etc., of the office had but little bearing, if any at all, upon the subject.

[3, 4] An affidavit subscribed and sworn to by Freeman, wherein it is recited that Holsman was one of the persons practicing, or assisting in the practice of medicine and surgery in his, Freeman's office, situated at 305½ South Spring street, was admitted in evidence over the objection of Holsman that what was said in the affidavit was not binding upon him. It does not appear that the affidavit was made in furtherance of the conspiracy, or to effectuate its purposes. Indeed, it was made at a date previous to the time when it is alleged by the indictment that the conspiracy was entered into, and it should have been rejected as to Holsman. We think, however, the error was cured by instruction to the jury as follows:

"The court further instructs you that, while the acts or declarations of a coconspirator cannot prove the existence of the conspiracy itself, any act or declaration done or made by one of the conspirators during the existence and in furtherance of the unlawful combination, when proven, is not only evidence against him, but is evidence against the other conspirator who, if the combination be proved, is as much responsible for such act or declaration as if done or made by himself. You must not, however, permit yourselves to use against either defendant anything said or done outside the presence of such defendant, unless you believe from the evidence, beyond a reasonable doubt that at the time the things were said or done a conspiracy existed between the party saying or doing the things and the defendant to be effected thereby. In such a case it is only those things said or done in furtherance of the objects of the conspiracy which are chargeable against the other member or members of such conspiracy."

[5] The next assignment of error relates to the admission in evidence of two bound volumes of the Los Angeles Examiner, containing advertisements of the defendant Freeman. Previous to the admission of such volumes, certain of Freeman's advertisements had been introduced under stipulation of counsel that they should be allowed to go

to the jury. The advertisements contained in the two volumes are similar to those admitted under the stipulation; they being simply a continuation of Freeman's advertising in the same journal. It is not at all apparent that their admission proved harmful to defendants.

[6] The next assignment pertains to the admission of certain decoy letters and the answers thereto in evidence. The objection urged by counsel in their brief is to the effect that the letters were admitted without showing that they were received at the office of the defendant Freeman, and that certain replies, purporting on their face to come from his office, were received by the post office inspectors who caused the decoy letters to be sent. It was stipulated between the government and the defendants Freeman and Holsman that these letters were received, through the post office department, at the office of Freeman, and that the replies were transmitted through the mail from said office, and nothing was left for the determination of the court except the competency thereof as evidence fit to go to the jury.

That the letters were competent is beyond question. The inspectors in no way became parties to the alleged conspiracy in sending the decoy letters. Their course was adopted simply for the purpose of ascertaining whether the law was being violated by the defendants, which resulted in obtaining pertinent evidence tending to show such violation of the law.

[7] It is specifically insisted that, while the replies purported to come from the defendant Freeman's office, that fact alone is not sufficient evidence from which it might legitimately be inferred that he authorized them to be sent. The contention is adequately answered by the opinion of the court in Hughes v. United States, 231 Fed. 50, 54, 145 C. C. A. 238, 242, of apt analogy to the present case. The court says:

"The defendants, N. A. Hughes, T. W. Hughes, August Marable, J. F. Allen, and Edward Parlan are shown by the government's evidence to have been physicians and principals in the business that was being conducted at the two locations mentioned as the seats of the conspiracy, and the jury were authorized to infer from the evidence that these defendants were responsible during the period covered by the years 1912 and 1913 for whatever was being done on the premises at each location, and that they shared, or were to share, in the profits of the transactions, knowing their actual character. It was also open to the jury to infer from the evidence that the purpose of the business that was being conducted during the period mentioned, at those places, was not the bona fide treatment of disease, but a scheme to secure money from patients, with no purpose to treat them in good faith as promised, but merely as a pretext for taking the money solicited. The correspondence between the inspectors and the defendants, introduced in evidence, was of a character which justified the jury in drawing the inference of bad faith and fraud, if they saw fit. The fact that only fictitious transactions, based on decoy letters written by inspectors, were in evidence, and that no money is shown to have been received by the defendants, did not prevent the jury from inferring the existence of the conspiracy charged in the first count or the fraudulent scheme charged in the remaining three."

[8] The next question presented, for which we find any assignment of error, is the refusal of the court to admit in evidence Defendants' Exhibits 1, 2, 3, 4, 5, 6, 7, and 8, which consisted of the correspondence from the office of the defendants from May 1, 1913, to January 4,

1914, including letters received, as well as copies of letters sent from the office, concerning requests for treatment. A careful examination of all this correspondence impels us to the conclusion that it is self-serving, and was not competent as evidence in the case.

[9] Counsel for appellants have discussed in their briefs, under heads designated as "(e)," "(f)," "(g)," "(h)," and "(i)," certain matters respecting which it is claimed that error was committed by the court, but we have searched in vain among the assignments of error filed on the appeal for any assignments respecting these matters. For this reason, such alleged errors cannot be insisted upon here, and this court is therefore not called upon to look into them. We have examined them, however, and find them to be without merit.

[10] At the close of the testimony, and when the parties had rested, the defendants requested that certain instructions be given in their behalf, which were refused. Error is assigned respecting the action of the court in that respect. It is needless to discuss requested instructions 1 and 2, because the gist thereof is clearly covered by instructions Nos. 5, 6, 9, and 10 given by the court.

[11, 12] By requested instructions 3, 4, and 5, the court was asked to instruct, in effect, that the decoy letters alone were not sufficient evidence upon which to base a verdict of guilty, unless the jury believed that, at the time such letters were mailed, defendants were actually engaged in the criminal practice charged in the indictment, or that the defendants had then conspired together for the unlawful purposes indicated, because if the jury believed that the alleged conspiracy was suggested and planned by the post office inspectors, and that the defendants had not previously been engaged in the conspiracy except as shown by the response to such letters, the government would not be permitted, under the policy of the law, to prosecute for a conspiracy thus induced, or respecting which it was a party; further, by requested instruction 4, that, unless the jury believed that the defendants, at the time alleged in the indictment, had formed a conspiracy as stated, without the suggestion and origination of the same by the post office inspectors, and independently thereof, they should acquit; and, by requested instruction 5, that the evidence, if any, or the facts and circumstances, if any, procured by the decoy method, could only be considered for the purpose of determining the question as to whether or not the defendants had actually entered into the conspiracy, and that any fact or facts, or circumstances, elicited by the decoy letters, were not of themselves sufficient to sustain a verdict of guilty, unless the jury believed that the defendants had, independently of such letters, entered into the conspiracy at the time and place alleged in the indictment.

The court instructed the jury, by its instructions 12 and 13, as follows:

"If at the time the said decoy letter or letters were mailed to the defendants, or one of the defendants, the said defendants were engaged in the criminal practice charged in the indictment, and the said defendants, in response to said alleged decoy letters, mailed one or both of the letters set forth in the indictment in answer to such decoy letters, or either of them, in order to execute or carry out such conspiracy, or in an attempt so to do,

then the use of such decoy letters and the answers thereto can lawfully be received as evidence to prove said conspiracy.

"A government official cannot conspire with another person to violate the laws of the United States for the purpose of getting such person convicted of a crime. The conspiracy with which the defendants are charged must be proven to exist independently of any inducement to enter therein by any government official. In other words, if the conspiracy existed, it does not matter what the government officers did in order to procure evidence to prove it. * * *

"You are instructed that the fact that the letters alleged in the indictment were in reply to such decoy letters is no defense in this action. You are further instructed that a government officer, suspecting that a person or persons may be engaged in a business in violation of the laws of the United States, has a right to seek information under an assumed name, directly from such person or persons so suspected; that if such suspected person or persons respond to such inquiry for such information, and by so responding violates a law of the United States by using the mails to convey such information, which use of the mails is prohibited by law, then such person or persons so using the mails cannot, when indicted for that offense, set up that he would not have violated the law if the inquiry had not been made of him by the government official or through the procurement of the government official."

Practically every phase of defendants' requested instructions 3, 4, and 5, it will be seen by comparison, is covered by the court's instructions 12 and 13. The only point especially urged is that the court should have instructed that the facts and circumstances acquired by the decoy letters were not of themselves sufficient to sustain a verdict of guilty, unless the jury believed that defendants had, independently of the decoy letters, entered into the conspiracy.

In a certain class of cases, the action of the party respecting decoy letters will render him liable criminally, and will constitute the substantive offense, regardless of what he may have done previously. Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550, is a good illustration. There the defendant had been suspected of posting nonmailable matter, and decoy letters were sent for testing out whether he was thus transgressing the law, with the result that the defendant mailed such nonmailable matter. He was indicted for doing the particular act, and the prosecution was sustained. Goode v. United States, 159 U. S. 663, 16 Sup. Ct. 136, 40 L. Ed. 297, is another case, where a letter carrier was suspected of embezzling from the mail, and his conviction for taking money and stamps from a decoy letter was upheld.

It is not claimed here that the act of replying to the decoy letters constitutes the substantive offense. But an element of the offense charged is the existence of the conspiracy. The decoy letters were not designed or calculated to induce the defendants to conspire together for committing the offense of devising or attempting to devise a scheme to defraud, but their purpose was to elicit from defendants something of what they were doing. If the answers contained matter tending to show that a conspiracy existed, they were pertinent evidence for establishing that fact, and it was proper for the jury to consider them, along with the other testimony in the case, for determining whether or not such a conspiracy did in fact exist. But it is true that the conspiracy must have existed independently of the decoy letters;

that is, of the effect of such letters, not as evidence, but as inducing the conspiracy; and this is evidently the true interpretation of defendants' requested instructions. The point is adequately, or at least understandingly, covered, however, by the court's charge to the effect that the conspiracy must be proven to have existed independently of any inducement to enter into it by any government official. This, of course, refers to the decoy letters.

The cases of Woo Wai v. United States, 223 Fed. 412, 137 C. C. A. 604, and Sam Yick et al. v. United States, 240 Fed. 60, 153 C. C. A. 96, are without application to the present controversy.

By requested instruction 7, it was sought to have the court instruct that the jury should acquit unless they believed from the evidence that the defendants in some way knew of, or intentionally authorized, the mailing of the letters set out in the indictment. We think that this is sufficiently covered by the court's instruction 9. The same may be said of the defendants' requested instructions 9 and 11, in so far as they correctly state the law.

[13] Criticism is made of the court's instructions 12 and 13, in that it is urged that certain expressions of the court contained therein are contradictory and inconsistent. The analysis of counsel is this:

"First, that the jury are told that the conspiracy must be proven independently of any inducement to enter into it by the government official, and in the next place that the fact that the letters were decoy letters is no defense in this case, when as a matter of fact they may or may not have been a defense, depending upon whether or not the jury believed the conspiracy existed independently of the letters, and for this reason, also, the charge was upon the weight of the evidence. In other words, the court had plainly told the jury that the conspiracy must be proven independently of any inducement to enter therein by the government officials, and then, with full knowledge that the decoy letters were the only evidence in the case relied on by the government, the court instructed the jury that the fact that they were decoy letters was no defense, thereby making the instruction misleading, contradictory, and confusing."

This harks back somewhat to the discussion touching requested instructions 3, 4, and 5. The decoy letters, taken in connection with the replies thereto, were proper to be considered as evidentiary of the fact of the conspiracy. But the conspiracy must have existed independently of any inducement exerted by or through the agency of the decoy letters. The inducement here spoken of must be taken to signify the incitement of the defendants to commit the offense, whereby the government became a party thereto. Now, while the replies did constitute certain overt acts, which were made the basis of the indictment as having been committed in furtherance of the conspiracy, and were evidentiary, to some extent at least, of the fact of conspiracy, yet, as we have said, the decoy letters were not designed or calculated to induce nor, to emphasize the word, to incite the defendants to enter into the conspiracy, and could have no such effect. In this view, it was perfectly consistent for the court to tell the jury that the fact that the letters were decoy letters could not afford the defendants any defense to the prosecution: This simply because they did not incite the defendants to enter into the conspiracy, nor could they have, by any reasonable construction thereof. They did elicit the replies

by the defendants which constituted the overt acts. But these were entirely voluntary, and were written in pursuance of their previous practice of transacting the business in which they were engaged through the mails. The advertisements inserted in the Los Angeles Journal show this. The court's expression that it did not matter what the government officers did in order to procure evidence to prove the conspiracy was pertinent and proper in the connection in which it was used.

Having fully answered the objections and alleged errors specially insisted upon, and finding no error, the judgment will be affirmed.