G. A. LOVETT v. STATE.

No. A-5012. Opinion Filed Sept. 26, 1925.
(239 Pac. 274.)

Howe & Howe, Warren & Welch, O. A. Brewer, and Warren & Warren, for plaintiff in error.

George F. Short, Atty. Gen., and V. P. Crowe, Asst. Atty. Gen., for the State.

EDWARDS, J. From a conviction in the county court of Choctaw county on a charge of disturbing religious worship, the plaintiff in error, hereinafter called defendant, has appealed.

An information was filed charging the defendant, G. A. Lovett, and his wife, Mrs. G. A. Lovett, with the offense of disturbing religious worship. Upon the trial, Mrs. G. A. Lovett was acquitted, and the defendant, G. A. Lovett, convicted and his punishment fixed at a fine of $100. Two assignments of error are suggested to the court: First, that the information does not sufficiently charge an offense; second, that the evidence does not show the commission of an offense.

The information is drawn under sections 1832, 1833, C. O. S. 1921. It charges in subtsance that the defendant,

G. A. Lovett, and Mrs. Lovett, during a session of Sabbath school at Rock Hill schoolhouse, engaged in a quarrel with one Tom Norris, and during said quarrel denounced him as a liar. It will be observed that section 1832, supra, uses the word "willfully" in defining the offense. The word "willfully" is not used in the information. It is argued that the word "willfully" is part of the definition of the statutory offense and an essential ingredient of disturbing religious worship; that the act charged to have been done must have been done with the specific intent expressed in the statute, citing Cline et al. v. State, 9 Okla. Cr. 40, 130 P. 510, 45 L. R. A. (N. S.) 108; Canard & Whitmire v. State, 2 Okla. Cr. 505, 103 P. 737, 881, 139 Am. St. Rep. 949; Buffo v. State, 4 Okla. Cr. 516, 113 P. 233; Miller v. State, 9 Okla. Cr. 55, 130 P. 813; U. S. Zinc Co. v. Ross, 87 Okla. 21, 208 P. 805.

It is generally said that an information is sufficient which informs an accused of the offense with which he is charged with such particularity as will enable him to prepare his defense, and so defines and identifies the crime sought to be charged that the accused, if convicted or acquitted, will be able to defend himself in case he be again charged with the same offense by pleading the record of such former conviction or acquittal.

It is also settled that all the essential elements of the crime intended to be charged must be alleged in the information, but it is not necessary that the words used in the statute be strictly pursued in an information, but other words conveying the same meaning may be used. In the information before us the acts done are specifically set out, and it is charged that they were done contrary to law, and a liberal construction of the statute is indulged in favor of the state in this class of cases. Cline v. State, supra.

In 31 Corpus Juris, 697, it is said:

"Where the act, if done at all, is done unlawfully, it need not be charged to have been done willfully."

That is, even though the word "willfully" is used in defining the offense, where the acts and words charged clearly import an exercise of the will, and said acts are charged to have been done unlawfully, the use of the word "willfully" is not essential. 31 Corpus Juris, 698; Holsman v. United States, 248 F. 193, 160 C. C. A. 271, 12 A. L. R. 390. While the safer rule is to follow the language of the statute in defining offenses, yet, under the liberal rule of our statute, and particularly the harmless error statute (section 2822, Comp. St. 1921), we believe the information is not fatally defective.

Upon the second assignment, that the evidence does not show the commission of the offense charged, the record discloses a state of facts about as follows: The defendant, G. A. Lovett, was acting superintendent of a Sunday school at Rock Hill schoolhouse, near Hugo. His wife, Mrs. G. A. Lovett, was a teacher in one of the classes. The defendant had formerly been a minister and bore a high reputation for good character and standing in his community. Some time prior to the occasion in question, one Mr. Norris and his wife, who was a sister of Mrs. Lovett, had become estranged and had separated, and some talk apparently had connected the defendant, G. A. Lovett, with bringing about the separation. At the time charged, after the classes in Sunday school had concluded their lessons and while waiting for the report of the secretary, Mrs. Lovett arose and asked permission to make a statement. No objection being made by any one, she stated in substance that it was being reported that Mr. Lovett had been charged with having some connection with the separation of Norris and his wife, but that such reports were false, and that the separation was due to other difficulties arising from the children of the respective parties by former marriages, and quoted some statement attributed to Mr. Norris in ref-

erence to that matter. Whereupon a son of Mr. Norris, present, interrupted and stated that he did not believe that his father had made such a statement, and about this time the defendant arose and said in substance that any one who said he had anything to do with the separation of Norris and his wife was an "infernal liar." Some other member of the congregation then arose and suggested that that was not a proper place to discuss such matters and proceeded to adjourn Sunday school. There is little conflict in the testimony as to what took place at the time charged. The question now is, Did the statements of the defendant fall within the definition of a disturbance of a religious meeting, as defined by section 1833, C. O. S. 1921? It can, under no possible view, fall under any part of it other than the first subdivision, which is as follows:

"First. Uttering any profane discourse, committing any rude or indecent act, or making any unnecessary noise, either within the place where such meeting is held, or so near it as to disturb the order and solemnity of the meeting."

It is argued by the state that the language used is within the definition of an unnecessary noise. It is not, however, contended, nor does the evidence show, that the defendant acted other than in a quiet manner, and while the language used was vigorous and emphatic and inappropriate, it is not shown to have been said in a loud or threatening manner. It is the words rather than the manner of speaking that is complained of. But the undisputed evidence shows that the defendant, a former minister and at the time a prominent worker in the church of his community, had attacks on his character spread in the community. Without any act on his part it was openly called to the attention of the Sunday school in which he was at the time taking a leading part. The action imperatively required that he repel these aspersions, and he did so in the language quoted, and in so doing we think he was not

guilty of any crime. We do not conceive that he was in any worse position by reason of the fact that his wife raised the question than if some other person had raised it. When the character of an individual is assailed or questioned in a public meeting, the individual assailed is not required to sit meekly by and submit to any inference of guilt that might arise from silence, but has a right to proclaim his innocence in no uncertain manner.

For the reasons assigned, the case is reversed and remanded, with instructions to the lower court to dismiss.

BESSEY, P. J., and DOYLE, J., concur.